UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| CHARLES R. CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:07-cv-1277-SEB-DML |
| | ) | |
| THE KROGER CO. d/b/a THE | ) | |
| INDIANAPOLIS BAKERY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on Defendant's Motion for Summary Judgment

[Docket No. 36], filed on October 3, 2008, pursuant to Rule 56 of the Federal Rules of

Civil Procedure and Local Rule 56.1.[1]  Plaintiff, Charles Clark, brings this claim against

his former employer, Defendant, Kroger Limited Partnership II (incorrectly identified as

The Kroger Co.) d/b/a The Indianapolis Bakery ("Kroger"), for its allegedly

discriminatory actions toward him based on his disability, in violation of the Americans

with Disabilities Act, 42 U.S.C. § 12101 *et seq*. ("ADA"), and his age, in violation of the

Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. ("ADEA").[2]  For the

---

[1] On November 12, 2008, Plaintiff filed a Motion for Oral Argument [Docket No. 51].
Plaintiff's Request for Oral Argument is hereby <u>DENIED</u>.  The briefings in this cause are both
thorough and prolix.  Therefore, we are able to reach our decision based upon these pleadings,
and oral argument on the issues before us is unnecessary.

[2] Plaintiff originally also brought ADA and ADEA retaliation claims, as well as a

(continued...)

reasons detailed in this entry, we <u>GRANT</u> Defendant's Motion for Summary Judgment.

## **Factual Background**

On September 2, 1981, Mr. Clark was hired by Kroger in Houston, Texas.  In 1993, Mr. Clark accepted employment as a Distribution Supervisor at Kroger's Indianapolis Bakery ("the Bakery"), a manufacturing plant located in Indianapolis, Indiana, which produces breads, buns, and tortillas.  In 1995, Mr. Clark became Distribution Manager at the Bakery, a position he held until his termination on November 9, 2006.

### **Plaintiff's Job Duties as Distribution Manager**

Mr. Clark testified by deposition that, in his position as Distribution Manager in 2005, his duties included: ensuring that all employees were in attendance on a daily basis; walking through the production lines to make sure that the on-duty supervisors were in their correct positions on the floor; walking through the production and shipping lines to quality check the product on the lines; and conducting tray calculations to prepare a weekly report of tray movement for the general office.  Clark Dep. at 240-41.  Mr. Clark also testified that, although the Distribution Manager would occasionally need to lift trays

---

[2](...continued)
pendant state retaliation claim, against Defendant.  However, on October 29, 2008, following a stipulation of dismissal filed by the parties, this Court dismissed those claims with prejudice. Therefore, only Plaintiff's claims alleging discrimination in violation of the ADA and ADEA remain.

in order to properly perform a quality check, there was always another employee around who could do that for him if necessary.  Id. at 243.  Mr. Clark also testified that he occasionally had to bend and stoop in order to pick up objects, such as paper, on the floor that represented safety hazards.

His duties in 2005 changed slightly from his duties in 2003, due to an employee strike that occurred.  During the time leading up to the strike as well as the time following the strike (which includes the time period up to and including November 8, 2005), the Distribution Manager was required to walk the lines with more frequency.  Id. At 241-42.  When Mr. Clark first arrived in the morning, he would walk the lines to check employee attendance.  He would also conduct approximately two walking trips for quality control, which lasted on average an hour each.  According to Mr. Clark, in addition to the required walks of the shipping and production lines, anytime he would leave the department to get a cup of coffee, attend a meeting, or go to the bathroom, he would walk up the lines to his destination so that he could observe production.  Id. at 243-46.  However, Mr. Clark contends that the increased walking requirement was no longer one of his duties when he returned from his second leave of absence in March of 2006.  Overall, Mr. Clark contends that the majority of his duties as Distribution Manager are largely non-physical.

Kroger, on the other hand, contends that the Distribution Manager position required a significant amount of standing and walking the production and shipping lines for purposes of checking attendance and conducting quality checks; twisting, stooping, and bending during sanitation and safety inspections for physical hazards; and the ability

to lift at least more than twenty (20) pounds on a regular basis (and up to fifty (50) pounds in some circumstances) in order to lift trays containing product to check for accuracy before shipping.

**Plaintiff's Medical History**

In May of 2003, Mr. Clark began experiencing back problems after hitting a tree root while riding a lawn tractor at his home.  Mr. Clark first saw his personal physician, Robert Smith, M.D., for treatment following the accident, who referred him to Dr. Cittadine.  After an MRI revealed that Mr. Clark had suffered a T12 compression fracture in his back, Dr. Cittadine referred Mr. Clark to a different physician, Dr. Scott, to perform a vertebroplasty.[3]  Because of his injury, Mr. Clark requested, and was granted, a medical leave of absence for approximately six to eight weeks in 2003.  When Mr. Clark returned to work after his medical leave, he contends that he was under various medical restrictions, including a fifteen-pound lifting limit and restrictions on pushing and pulling.

For a period of time after undergoing the vertebroplasty and subsequent physical therapy, Mr. Clark's back pain significantly lessened, and he reported a sixty to seventy percent decrease in symptoms.  However, over time, the pain began to increase again, and, on November 3, 2005, Mr. Clark went to the Riverview Health and Fitness Center because he was experiencing back pain while walking, sitting, and prolonged standing.

---

[3] Vertebroplasty is a medical procedure used for spinal repair in which a special bone cement mixture is injected into the fractured area to stabilize the bone.

According to Mr. Clark, the pain was worse than the pain he had experienced in 2003, which physicians determined was caused by two additional fractures in his back.  In his deposition, Mr. Clark testified that he is unaware of the cause of these fractures or when they occurred and whether they took place at work or at home.[4]  Clark Dep. at 112.

Upon Dr. Smith's recommendation, on November 9, 2005, Mr. Clark requested and received a second medical leave of absence from his employment.  According to Mr. Clark, due to his increased pain and difficulty moving around, he concurred with his physician that it was necessary to take a period of time off from performing his duties as Distribution Manager.  In January 2006, while Mr. Clark was still on medical leave from the Bakery, he visited Dr. Smith, who told him (Mr. Clark) that he could not perform the duties of the District Manager position at that time.  According to Dr. Smith, there have been no marked improvements in Mr. Clark's medical condition since that time.

However, according to Mr. Clark, in late January or early February 2006, Dr. Smith cleared him to return to work with the following restrictions: (1) no lifting of more than fifteen to twenty pounds; (2) no pushing; (3) no pulling; and (4) must alternate between sitting and standing.  When he informed Kroger that he had been cleared by Dr. Smith to return to work, Human Resource Manager Dana Widger, told him that he would be required to be cleared by the company's physician, Scott Taylor, M.D., before he

---

[4] In his complaint, Mr. Clark alleged that, in 2005, a union strike required him to perform manual duties which were outside of his regular job duties as District Manager and exceeded his medical restrictions.  According to Mr. Clark's allegations in his complaint, it was these extra job duties which caused additional injury to his spine and aggravated his medical condition. Am. Compl. ¶¶ 10-11.

could return to his position.[5]  On March 8, 2006, after examining Mr. Clark, Dr. Taylor

determined that he could return to work with the following restrictions: (1) no repetitive

twisting or bending; (2) must alternate standing and sitting with comfortable chair with

lumbar support; (3) no climbing activity; and (4) lifting limit of ten pounds, occasionally.


**Plaintiff's Return to Work and Subsequent Termination**

Following Dr. Taylor's examination, on March 13, 2006, Mr. Clark returned to

work and had a meeting with Mr. Widger and the Plant Manager, Nick Cortolello.  Mr.

Clark testified by deposition that, in that meeting, he discussed his restrictions with Mr.

Widger and Mr. Cortolello and shared with them that, during the strike, he had performed

many duties, such as the plant walking tours, that he would no longer be able to perform,

given his restrictions.  They also discussed ordering a new chair for Mr. Clark that would

provide better back support and the possibility of moving his office to the first floor so he

would not be required to walk upstairs.  According to Mr. Clark, at that meeting, neither

Mr. Widger nor Mr. Cortolello appeared to have any concerns about his restrictions and

they told him that they would work with the restrictions.  However, Kroger contends that,

after discussing Mr. Clark's restrictions, Mr. Cortolello told him that he (Mr. Cortolello)

and Mr. Widger would need to seek direction from Kroger management in Cincinnati,

Ohio, regarding how to proceed and asked Mr. Clark if they could meet again in the

---

[5] In 2003, following his first medical leave of absence, Mr. Clark was allowed to return to work without any additional examinations.

morning.

Kroger contends that, following their meeting with Mr. Clark, Mr. Widger and Mr. Cortolello contacted Kroger Manufacturing's Senior Director of Human Resources and Labor Relations, Joe Girone, and Steve Keubbing to discuss possible accommodations, including the possibility of moving Mr. Clark's office to the first floor and utilizing a motorized cart.[6]  According to Kroger, they determined that moving Mr. Clark's office was feasible, but that use of a cart presented problems due to safety concerns, congestion in the area, and the layout of the lines in the plant.  Additionally, even if a cart were feasible, Mr. Clark's bending, twisting, and lifting restrictions were still problematic because, as Distribution Manager, Mr. Clark was required to twist and bend while conducting quality checks and had to lift trays for product inspection.  Kroger asserts that there were no other management positions open at the Bakery; rather, the only open positions were hourly jobs in production which required even more intense physical activity.  Thus, Mr. Widger and Mr. Cortolello concluded that, unless Mr. Clark's condition improved and/or his restrictions changed, there was no position available at the Bakery that Mr. Clark could perform.

The next day, on March 14, 2006, Mr. Clark reported to the Bakery for work. According to Mr. Clark, it was only then that he was told by Mr. Widger that Mr.

---

[6] In his deposition, Mr. Girone testified that he never discussed with Mr. Widger or Mr. Cortelollo any accommodations for Mr. Clark besides the possibility of creating a desk job. Deposition of Joseph Girone ("Girone Dep.") at 35.

Cortolello wanted to have another meeting with him, at which he claims he was first informed that, upon review, his restrictions were more severe than had been anticipated and that Mr. Widger and Mr. Cortolello needed to consult with the company's main office to determine how to proceed.  Mr. Widger then told Mr. Clark to leave for the day and that he would be contacted when a final decision was made.

Kroger, however, contends that, at the March 14, 2006, meeting, Mr. Cortolello informed Mr. Clark that his restrictions prevented him from returning to the position of Distribution Manager and that the Bakery could not create a job for Mr. Clark if there was not one available that he could perform.  Either Mr. Widger or Mr. Cortolello also told Mr. Clark to keep Kroger apprised of any changes in his condition that might affect his restrictions and that he should check the Kroger website for job openings or apply for long-term disability.  Mr. Widger also told Mr. Clark that he would contact him if he became aware of any available jobs that Mr. Clark could perform.  Mr. Widger subsequently spoke with Mr. Clark by telephone and reminded him to inform Kroger as to any changes in his medical restrictions and to check the Kroger website for any job openings which might arise that he could perform.  After April 2006, Mr. Clark did not contact anyone from Kroger regarding changes in his restrictions or improvements in his medical condition.

On April 21, 2006, Mr. Widger contacted Mr. Clark by telephone and told him that he would be terminated as of November 9, 2006, if he could not return to work by that date.  On May 18, 2006, Mr. Widger reiterated in writing that, if Mr. Clark did not return

to work within one year from the beginning of his leave of absence, he would be terminated.  Mr. Clark did not return to work within the allotted time period, and thus, on November 9, 2006, Mr. Clark was terminated for failure to return to work within one year of his medical leave pursuant to Kroger's leave policy.[7]


**Plaintiff's Replacement**

The parties disagree regarding who replaced Mr. Clark in the Distribution Manager position.  According to Kroger, from the time Mr. Clark took his second leave of medical absence in November 2005, until June 2006, Shipping Supervisor Terry Heien assumed Mr. Clark's responsibilities.  Then, in June 2006, Ron Hampton was hired to assist Mr. Heien.  Kroger contends that Mr. Clark's duties were ultimately divided up and jointly assumed by Mr. Heien, Mr. Hampton, and John Becraft.  These three employees continued to perform their own responsibilities in addition to those previously performed by Mr. Clark until October 21, 2006, when the distribution functions at the Bakery were outsourced to a third party.  At that point, all of the employees in affected management positions, which also included the Distribution Manager position, were offered Production Supervisor positions.[8]  At the time Mr. Clark was terminated, on November 9, 2006, Mr. Heien was fifty (50), Mr. Becraft was forty-nine (49), and Mr. Hampton was

---

[7] Kroger's leave policy provides that ninety-day extensions beyond the one-year leave may be granted upon written request supported by a medical certificate.  Widger Dep. at 60.

[8] Kroger contends that, due to his restrictions, Mr. Clark would also have been unable to perform the essential functions of the Production Supervisor position.

forty-one (41).  There is no dispute that, at the time he was terminated, Mr. Clark was over the age of fifty.

Mr. Clark, on the other hand, contends that Kroger hired Mr. Hampton to replace him as Distribution Manager and that Mr. Hampton assumed all of Mr. Clark's former duties and responsibilities.  On Kroger's payroll documents, Mr. Hampton is assigned the same job code that had been assigned to Mr. Clark when he held the Distribution Manager position.  However, Kroger contends that that is simply a typographical error and that Mr. Hampton actually applied for and was hired as a Distribution Supervisor.  A comparison of Mr. Clark's and Mr. Hampton's payroll records shows that they did not receive the same compensation.  Additionally, Mr. Hampton's job application listed "Shipping/Receiving Supervisor" as the position he was applying for and Mr. Hampton's offer letter, dated June 29, 2006, lists "Distribution Supervisor" as the position being offered.  Exh. EE.

**Plaintiff's Application for Social Security Benefits**

In April 2006, Mr. Clark applied for Social Security benefits.  In his application, Mr. Clark stated that he had first been injured in 2003 and that his back condition (in combination with osteoporosis and degenerative disc disease) was his disability.  In his application, Mr. Clark asserted that his back condition impacted his ability to lift, stand for long periods of time, walk, climb, push, and pull.  After his disability claim was initially denied, in August 2006, Mr. Clark's representative filed a request for a hearing

10

from the Social Security Administrative Law Judge ("ALJ").  In support of that request,

Mr. Clark stated that the ALJ "was not reasonably justified in denying my claim.  I am

not able to engage in substantial gainful activity.  I remain totally disabled."  Docket No.

37-23.  On November 28, 2008, Mr. Clark was approved for Social Security benefits.


**The Instant Litigation**

On September 1, 2006, Mr. Clark filed a Charge of Discrimination with the Equal

Employment Opportunity Commission ("EEOC"), alleging that Kroger discriminated

against him based on his age and disability.  On September 4, 2007, after receiving his

"right to sue letter" from the EEOC, Mr. Clark filed the Complaint in this action in

Hamilton Superior Court.  On October 4, 2007, the action was removed to this Court.


## Legal Analysis

### I.    Standard of Review

Summary judgment is appropriate when the record shows that there is "no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Disputes concerning material facts are genuine where the evidence is such that a

reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material

fact exist, the court construes all facts in a light most favorable to the non-moving party

and draws all reasonable inferences in favor of the non-moving party.  See id. at 255.

However, neither the "mere existence of some alleged factual dispute between the

parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the

material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586

(1986), will defeat a motion for summary judgment.  Michas v. Health Cost Controls of

Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

      The moving party "bears the initial responsibility of informing the district court of

the basis for its motion, and identifying those portions of [the record] which it believes

demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S. at 323.

The party seeking summary judgment on a claim on which the non-moving party bears

the burden of proof at trial may discharge its burden by showing an absence of evidence

to support the non-moving party's case.  Id. at 325; Doe v. R.R. Donnelley & Sons, Co.,

42 F.3d 439, 443 (7th Cir. 1994).

      Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle

for resolving factual disputes.  Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th

Cir. 1994).  The record and all reasonable inferences that may be drawn from it are

viewed in a light most favorable to the party opposing the motion.  Anderson, 477 U.S. at

247-52.  Therefore, after drawing all reasonable inferences from the facts in favor of the

non-movant, if genuine doubts remain and a reasonable fact-finder could find for the

party opposing the motion, summary judgment is inappropriate.  See Shields Enterprises,

Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of

Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989).  But if it is clear that a plaintiff will be

unable to satisfy the legal requirements necessary to establish his or her case, summary

judgment is not only appropriate, but mandated.  See Celotex, 477 U.S. at 322; Ziliak v.

AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003).   Further, a failure to prove one

essential element "necessarily renders all other facts immaterial."  Celotex, 477 U.S. at

323.

The summary judgment standard is applied rigorously in employment

discrimination cases, because intent and credibility are such critical issues and direct

evidence is rarely available.  Seener v. Northcentral Technical Coll., 113 F.3d 750, 757

(7th Cir. 1997); Wohl v. Spectrum Mfg., Inc., 94 F.3d 353, 354 (7th Cir. 1996).  To that

end, we carefully review affidavits and depositions for circumstantial evidence which, if

believed, would demonstrate discrimination.  However, the Seventh Circuit has also made

clear that employment discrimination cases are not governed by a separate set of rules,

and thus remain amenable to disposition by summary judgment so long as there is no

genuine dispute as to the material facts.  Giannopoulos v. Brach & Brock Confections,

Inc., 109 F.3d 406, 410 (7th Cir. 1997).


## II.    ADA Claim

Under the ADA, discrimination is prohibited "against a qualified individual with a

disability because of the disability of such individual in regard to job application

procedures, the hiring, advancement, or discharge of employees, employee compensation,

job training, and other terms, conditions and privileges of employment."  42 U.S.C. §

12112(a); Furnish v. SVI Sys., Inc., 270 F.3d 445, 448 (7th Cir. 2001).  Additionally, the

Act provides that an employer engages in disability discrimination by "not making

reasonable accommodations to the known physical or mental limitations of an otherwise

qualified individual with a disability."  42 U.S.C. § 12112(b)(5)(A); Basith v. Cook

County, 241 F.3d 919 (7th Cir. 2001).   It is the plaintiff's burden to prove that he is a

"qualified individual" under the ADA, to wit, that he is "an individual with a disability

who, with or without reasonable accommodation, can perform the essential functions of

the employment position that [he] holds or desires."  Weiler v. Household Fin. Corp, 101

F.3d 519, 524 (7th Cir. 1996) (quoting 42 U.S.C. § 12111(8)).  Therefore, before we

consider Mr. Clark's ADA claims, we must first determine whether Mr. Clark was a

qualified individual with a disability within the meaning of the ADA.


### A.    Whether Plaintiff Is "Disabled" Under the ADA

Under the ADA, an individual has a "disability" if: (1) he has a physical or mental

impairment that substantially limits one or more of his major life activities; (2) he has a

record of such an impairment; or (3) his employer regards him as having such an

impairment.  42 U.S.C. § 12102(2); 29 C.F.R. § 1630.2(g).[9]  Here, Mr. Clark appears to

---

[9] On September 25, 2008, Congress amended the ADA's definition of disability.  See § 3
of the ADA Amendments Act of 2008 (September 25, 2008).  However, Section 8 of this statute
provides that the legislation's effective date is January 1, 2009.  Therefore, the new definition
does not apply here because we "use the laws and interpretations that were in force when the

(continued...)

argue only that he was regarded by Kroger as having an impairment that substantially limited at least one of his major life activities, not that he actually had such an impairment or a record of such.[10]  Thus, our analysis follows his lead, and we examine only the third of these definitions of disability.

An employee is "regarded as disabled" when "the employer, rightly or wrongly, believes that [he] has an impairment that substantially limits one or more major life activities."  Cigan v. Chippewa Falls School Dist., 388 F.3d 331, 335 (7th Cir. 2004) (citations omitted).  "[I]f an individual can show that an employer or other covered entity made an employment decision because of a perception of disability based on 'myth, fear, or stereotype,' the individual will satisfy the 'regarded as' part of the definition of disability."  29 C.F.R. Pt. 1630, App. § 1630.2(l) at 352 (1999).  "Under the ADA, the concepts of 'substantially limits' and 'major life activity' are the same whether the employee is proceeding under a claim that he is actually disabled or regarded as disabled."  Mack v. Great Dane Trailers, 308 F.3d 776, 782 (7th Cir. 2002).  In his response brief,[11] Mr. Clark alleges that, at the time he met with Mr. Widger and Mr.

---

[9](...continued)
complained-of acts occurred."  Kiesewetter v. Caterpillar, Inc., 2008 WL 4523595, at *1 (7th Cir. October 9, 2008) (citing Landgraf v. USI Film Products, 511 U.S. 244 (1994)).

[10] Because Mr. Clark's response brief addresses only the third definition of disability, to wit, that his employer regarded him as disabled, we find that he has waived any argument that he was actually substantially limited in a major life activity or that he had a record of such.

[11] Mr. Clark did not identify in his pleadings the major life activity in which he contended Kroger regarded him as substantially limited.  Kroger contends that, because Mr. Clark failed to
(continued...)

Cortolello on March 13th and 14th, 2006, they wrongly believed that he was substantially limited in the major life activity of working.

When the major life activity at issue is working, as is the case here, "substantially limits" means that the claimant was "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(I). A "class of jobs" is the job from which the claimant was disqualified, as well as all other jobs utilizing similar knowledge, training, and skills within "the geographical area to which the [claimant] has reasonable access." 29 C.F.R. § 1630.2(j)(3)(ii)(A)-(B). A "broad range of jobs in various classes" is the job from which the claimant was disqualified, as well as all other jobs not utilizing similar knowledge, training, and skills within "the geographical area to which the [claimant] has reasonable access." 29 C.F.R. § 1630.2(j)(3)(ii)(A), (C). Merely showing that an impairment prevented an individual from performing a particular job for a particular employer is insufficient to demonstrate that the individual is "disabled" under the ADA. E.E.O.C. v. Rockwell Int'l Corp., 243 F.3d 1012, 1018 (7th Cir. 2001) (citations omitted).

As Kroger asserts, Mr. Clark has presented no evidence that suggests that Kroger's beliefs about his limitations exceeded the scope of the actual limitations provided by his

---

[11](...continued)
identify a major life activity until his responsive briefing, his claims fail for that reason alone. However, upon review of the pleadings, we find that Mr. Clark alleged sufficient facts to satisfy the pleading requirements, and thus, we proceed to address the merits of his allegations.

physicians.  However, Mr. Clark contends that while Kroger may have correctly interpreted his medical restrictions, it mistakenly believed that those limitations prevented him from performing both an entire class of jobs at the Bakery (all floor management positions) as well as a broad range of jobs in various classes (all hourly production positions and all other vacant positions).

   In <u>E.E.O.C. v. Rockwell International Corporation</u>, the Seventh Circuit addressed the type and quantity of evidence required to raise an inference that the employer regarded the plaintiff as disqualified from a broad range of jobs in a class or a variety of jobs across several job classes.  The <u>Rockwell</u> court held that, in such a case, plaintiff "must include some proof of the 'number and types of jobs' within the 'geographical area to which the [claimant] has reasonable access.'" <u>Id.</u> at 1017 (citations omitted).  The court declined to create "a *per se* rule that a plaintiff cannot prevail without quantitative evidence of the precise characteristics of the local job market."  <u>Id.</u>  Nevertheless, the plaintiff must present "at least some evidence from which one might infer that [the claimant] faced 'significant restrictions' in [his] ability to meet the requirements of other jobs." <u>Id.</u> at 1018 (quoting <u>Davidson v. Midelfort Clinic, Ltd.,</u> 133 F.3d 499, 507 (7th Cir. 1998)).  In <u>Rockwell</u>, the court held that, because the only evidence in the record from which to infer that the defendant regarded the claimants as significantly restricted in the major life activity of working was that the defendant perceived them as unable to perform four specific jobs within the company, claimants had failed to meet their burden to prove that the defendant regarded claimants as disabled under the ADA.

The evidence in the record at bar establishes that Kroger believed that, in light of his restrictions, Mr. Clark was unable to perform: (1) the position of Distribution Manager and any floor management position at the Bakery because those positions all required an applicant to bend, twist, and lift up to fifty (50) pounds as essential job functions; and (2) any of the Bakery's hourly production positions because they required even more intense physical requirements than the management positions.  Further, after allegedly reviewing open positions at the Bakery for the period of time between March 14, 2006, when Mr. Clark was sent home from work, and November 9, 2006, when Mr. Clark was terminated, Mr. Widger did not find any open position that he believed Mr. Clark could perform.

However, as was the case in <u>Rockwell</u>, there is no quantitative evidence in the record at bar concerning the demographics of the Southern Indiana employment market. Thus, it is far from clear whether Kroger's belief that Mr. Clark's limitations foreclosed his performance of certain classes of jobs within the Bakery necessarily means that Kroger regarded him as foreclosed from performing a class of jobs or a broad range of classes of jobs elsewhere in Southern Indiana.  <u>See</u> <u>Peters v. City of Mauston</u>, 311 F.3d 835, 843 (7th Cir. 2002) ("[W]e previously declined to hold that a perception of disability arises solely from the employer's termination of the plaintiff because an impairment prohibits the employee from performing the job according to the employer's standards."). Nevertheless, given that the categories of jobs that Kroger concluded Mr. Clark could not perform based on his restrictions appear to be sufficiently varied and numerous (since his

supervisors were unable to find any vacant position at the Bakery that they believed he could perform from March to November 2006), it is possible that a reasonable jury could find that Kroger regarded Mr. Clark as being substantially limited in his ability to perform a particular class or broad class of job.

Thus, viewing the facts in the light most favorable to Mr. Clark, as we are required to do at this stage, we conclude that he has presented sufficient evidence to raise a genuine issue of material fact regarding whether Kroger regarded him as substantially limited in the major life activity of working.  However, that does not end our inquiry.  We proceed to address whether Mr. Clark was otherwise a qualified individual under the ADA.

**B.      Whether Plaintiff Is a "Qualified Individual" Under the ADA**

In order to be a qualified individual under the ADA, the Court must find that the plaintiff "satisfied the prerequisites of the job in terms of skills or experience" and "can perform the essential functions of the job with or without a reasonable accommodation." Branham v. Snow, 392 F.3d 896 (7th Cir. 2004) (quoting Peters, 311 F.3d at 845).  It is undisputed that Mr. Clark met the basic background qualifications for the position of Distribution Manager.  However, Kroger contends that he was unable to perform the essential functions of the job with or without reasonable accommodation.

In determining the essential functions of a job, we consider a number of factors, including the employer's judgment, written job descriptions, the amount of time spent on

the function, the consequences of not requiring the function, and the work experiences of those performing the job.  Rooney v. Koch Air, LLC, 410 F.3d 376 (7th Cir. 2005) (citing 29 C.F.R. § 1630.2(n)(3); Basith v. Cook County, 241 F.3d 919, 927 (7th Cir. 2001)). The court "shall not second-guess an employer's judgment as to the essential functions of a job."  Branham, 392 F.3d 896, 905 (7th Cir. 2004).

Kroger contends that essential functions of the Distribution Manager position included: (1) a significant amount of standing and walking the production and shipping lines for purposes of checking attendance and conducting quality checks; (2) twisting, stooping, and bending during sanitation and safety inspections for physical hazards; and (3) the ability to lift at least more than twenty (20) pounds on a regular basis (and up to fifty (50) pounds in some circumstances) in order to lift trays containing product to check for accuracy before shipping.  Mr. Clark, on the other hand, contends that his job was largely non-physical and that any physical requirements which violated his restrictions that he might occasionally be required to perform could be reasonably accommodated by having another employee complete the tasks.  Mr. Clark contends that Kroger made such an accommodation for him in 2003, when he returned to work after his first leave of absence.

We pause in our analysis to address Mr. Clark's disability claim filed with the Social Security Administration ("SSA") to determine whether representations made in that proceeding have bearing on our discussion of Mr. Clark's ability to perform the essential functions of the Distribution Manager position with or without reasonable

accommodations.  At some point after he was sent home from the Bakery in March 2006,

Mr. Clark filed a claim for long-term disability with the SSA.  His claim was initially

denied, but following a hearing, on November 28, 2008, Mr. Clark was approved for

disability benefits based upon the determination by the Administrative Law Judge

("ALJ") that Mr. Clark was unable to work as of November 8, 2005.

Because the SSA does not consider whether a claimant would be able to work if he

was provided a reasonable accommodation, receipt of Social Security benefits "does not

automatically disqualify a person from making a claim under the [ADA]."  Opsteen v.

Keller Structures, Inc., 408 F.3d 390, 392 (7th Cir. 2005).  However, "contradictions are

unacceptable."  Id.  Thus, "a person who applied for disability benefits must live with the

factual representations made to obtain them, and if these show inability to do the job then

an ADA claim may be rejected without further inquiry.  Id.  "[A] plaintiff's sworn

assertion in an application for disability benefits that []he is, for example, 'unable to

work' will appear to negate an essential element of [his] ADA case – at least if []he does

not offer a sufficient explanation."  Cleveland v. Policy Management Sys. Corp., 526 U.S.

795, 806 (1999).  Moreover, a plaintiff cannot contradict purely factual statements that he

previously made concerning the effects of his disability.  Lee v. Salem, Ind., 259 F.3d

667, 674 n.3 (7th Cir. 2001).

After his disability claim was initially denied, in August 2006, Mr. Clark's

representative filed a request for a hearing from the ALJ.  In support of that request, Mr.

Clark stated that the ALJ "was not reasonably justified in denying my claim.  I am not

able to engage in substantial gainful activity.  I remain totally disabled."  Docket No. 37-23.  On August 7, 2006, in another document submitted to the SSA, Mr. Clark asserted that he became unable to work because of his medical condition on November 8, 2005.  In that document, he stated that the Distribution Manger position required him to walk for four hours each day, stand for three hours, and sit for three hours, as well as perform tasks in which he reached, stooped, and crouched.  Mr. Clark also provided in the SSA form that he was required to lift varying amounts of weight as Distribution Manager, ranging from twenty-five pounds, which he stated he was required to lift frequently, to fifty pounds.  Docket No. 37-24.[12]  He represented that "[t]he longer I stand the more the pain comes on and the fatigue starts to set in" and that he was restricted to "a sitting job with some standing but not a large amount of walking."  Id.

The statements from Mr. Clark's physicians submitted in connection with his claim for disability benefits support his own representations to the SSA of his limitations.

---

[12] Mr. Clark contends that some of the documents submitted to the SSA should not be considered by the Court on the grounds that the documents have not been authenticated or they were completed by individuals who lacked actual knowledge of Mr. Clark's physical condition and restrictions or the job duties required by the Distribution Manager position.  We find these arguments unavailing.

Mr. Clark's application for Social Security benefits authorized any physician, hospital, agency or other organization to disclose any medical records or other information about his disability to the SSA.  Further, in his deposition, Mr. Clark testified that he provided the information contained in Docket No. 37-24 to an individual from Kennedy and Associates, the law firm expressly authorized by Mr. Clark to represent him in his claim for Social Security disability benefits, via telephone.  Clark Dep. 235, 240, 249-250.  Moreover, Mr. Clark has presented no evidence that he has contacted the SSA to report any inaccuracies in the documents or otherwise take any steps to correct any misinformation that he now contends was submitted in support of his successful claim for disability benefits.

For example, in a report dated May 31, 2006, which was submitted to the SSA, Dr. John Ward stated that, in his opinion, Mr. Clark has been disabled from full-time work due to his back condition as of November 8, 2005, and that Mr. Clark was unable to lift more than ten pounds and was able to stand and/or walk less than one hour of an eight hour day and sit less than two hours of an eight hour day.  Docket No. 37-34.

We find that the representations made by both Mr. Clark and his physicians in support of his successful claim for disability benefits demonstrate that he was unable to perform the essential functions of the Distribution Manager position.  Although Mr. Clark contends that the essential functions of the Distribution Manager position are disputed, the information he provided to the SSA regarding his duties in that position are consistent with Kroger's characterization of the essential functions of the job as requiring a significant amount of standing and walking, the ability stoop and bend, and the ability to lift at least twenty-five pounds.  In Mr. Clark's submissions to the SSA, he and his physicians represented that Mr. Clark had been fully disabled since November 8, 2005, could lift no more than ten pounds and was restricted in his ability to stand and/or walk for significant periods of time.

Mr. Clark nevertheless maintains that the representations made to the SSA on his behalf do not foreclose his ADA claim because, despite all of his limitations, he was able to perform the essential functions of his position with reasonable accommodations.[13]  Mr.

---

[13] Kroger contends that we need not address reasonable accommodations because the
(continued...)

Clark first maintains that, because he was only required to perform duties that required lifting amounts beyond his restrictions occasionally, other employees could step in when necessary and perform those tasks.  According to Mr. Clark, Kroger had provided him that specific accommodation following his return from his first leave of absence due to his back condition in 2003.  However, merely because Kroger may have previously allowed other employees to perform lifting duties that Mr. Clark could not perform after his initial back injury does not necessarily mean that such an accommodation would be reasonable on a permanent basis.  Rooney, 410 F.3d at 382 ("Facilitating injured workers' return to their jobs should not expose employers to future liability.").  It is well established under Seventh Circuit law that requiring another person to perform an essential function of a disabled employee's job is not a reasonable accommodation.  Peters, 311 F.3d at 845.

Mr. Clark also contends that Kroger could have reasonably accommodated him by extending his November 2005 leave of absence beyond the one-year period provided for by Kroger's leave policy to allow him additional time to improve.  However, in light of the fact that Kroger had been advised by Dr. Taylor that Mr. Clark's restrictions were "permanent" and that he (Mr. Clark) had reached "maximum medical improvement" (Docket No. 37-17), we are unable to find that it would have been reasonable to require

---

[13](...continued)
majority of courts that have addressed the issue have found that a plaintiff who claims he is "regarded as" disabled under the ADA is not entitled to a reasonable accommodation.  However, because some courts have found that such a plaintiff is nevertheless still entitled to reasonable accommodations, we proceed with our analysis.

Kroger to keep Mr. Clark's position open indefinitely under such circumstances.

For the foregoing reasons, we conclude that, at the time Mr. Clark received his permanent restrictions in March 2006, he was unable to perform the essential functions of the position of Distribution Manager with or without reasonable accommodations, and was thus not a qualified individual with a disability under the ADA.  Accordingly, we GRANT Kroger's Motion for Summary Judgment as to Mr. Clark's claim brought pursuant to the ADA.

## III.    ADEA Claim

Pursuant to the ADEA, it is "unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(2).  Mr. Clark has chosen to attempt to prove discrimination indirectly within the McDonnell Douglas burden-shifting framework.[14] See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973).

Traditionally, under McDonnell Douglas, a plaintiff must begin by establishing a prima facie case of discrimination, which requires a showing that: (1) he is a member of a protected class (age 40 or over); (2) his performance met his employer's legitimate job

---

[14] This approach applies to claims brought under Title VII of the Civil Rights Act of 1964, as well as claims brought under the ADEA.  Barricks v. Eli Lilly and Co., 481 F.3d 556, 559 (7th Cir. 2007) (citing Raymond v. Ameritech Corp., 442 F.3d 600, 610 (7th Cir. 2006)).

expectations; (3) he suffered an adverse employment action; and (4) the circumstances surrounding the adverse action indicate that it is more likely than not that his age was the reason for it, which may be demonstrated by showing that his employer treated similarly situated employees outside of the protected class more favorably.  See Elkhatib v. Dunkin Donuts, Inc., 493 F.3d 827, 830 (7th Cir. 2007).  If the plaintiff succeeds in establishing a *prima facie* case of discrimination, the burden then shifts to the defendant to articulate a nondiscriminatory reason for the actions it took against the plaintiff.  If the defendant can offer a legitimate, nondiscriminatory reason for the employment decision, the burden reverts back to the plaintiff to show that there is a genuine dispute of material fact that the proffered reason for the employment action is pretextual.  Nese v. Julian Nordic Constr. Co., 405 F.3d 638, 641 (7th Cir. 2005).

Because, for the reasons detailed above, we find that Mr. Clark was unable to perform the essential functions of the Distribution Manager position at the time he was allegedly replaced by younger employees, we are unable to conclude that Mr. Clark was meeting Kroger's legitimate job expectations at that time.  It is well established under Seventh Circuit law that "[f]ailure to satisfy any one element of the prima facie case is fatal to an employee's retaliation claim."  Sublett v. John Wiley & Sons, Inc., 463 F.3d 731, 740 (7th Cir. 2006) (quoting Hudson v. Chicago Transit Auth., 375 F.3d 552, 560 (7th Cir. 2004)).  Accordingly, we GRANT Kroger's Motion for Summary Judgment as to Mr. Clark's ADEA claim.

**IV.    Conclusion**

For the reasons detailed above, we <u>GRANT</u> Defendant's Motion for Summary

Judgment.  Final judgment will be entered accordingly.

IT IS SO ORDERED.


Date: _____09/30/2009_____                    _____

                                                                SARAH EVANS BARKER, JUDGE
                                                                United States District Court
                                                                Southern District of Indiana

27

Copies to:

Joseph H. Hogsett
BINGHAM MCHALE, LLP
jhogsett@binghammchale.com

Lori W. Jansen
ROCKWELL JANSEN
lorijansen@rockwelljansen.com

Cynthia  Rockwell
ROCKWELL JANSEN  LLC
cynthiarockwell@rockwelljansen.com